My name is Charles Stephen Ralston. I'm appearing for the plaintiff, Appellant Jones, and I would like to reserve two minutes of my time for rebuttal. The issues in this case are fairly straightforward. It's whether the district court erred in granting summary judgment in this race discrimination case on both the underlying race discrimination claim and on plaintiff's claim of retaliation because he had filed complaints and otherwise challenged race discrimination. We have set out in our briefs at some length, and I'd like to discuss primarily the retaliation claim, we have set out the sequence of events from which we contend a jury could determine that there had been retaliation. We have just recently filed a letter bringing to the Court's attention the decision in Davis v. Team Electric Company, which I think is useful in terms of looking at the sequence of events in terms of the temporal closeness of events. In Davis, the Court looked at the fact that the initial action involving the plaintiff took place shortly after the EEOC had had a hearing on her matter. In the district court in this case looked basically only at the time when the plaintiff had actually filed an EEOC complaint, but a number of things happened after that EEOC complaint, including the initial dismissal of the EEOC complaint in December 16th of 2002. It was with only possibly three weeks after that that the first disciplinary action was taken against Mr. Jones on January 7th, 2003. That culminated in his being terminated. Shortly thereafter, Mr. Jones filed a grievance from that discipline, in which he claimed that the discipline was in retaliation for him having filed his EEOC complaint. On January 22nd, 2003, there was a meeting on the grievance. In his grievance, he had specifically claimed that his supervisor, Mr. Smith, had retaliated against him for the EEOC complaint. At the meeting on the grievance on January 22nd, Mr. Smith was present together with Mr. Gallagher, who was in human relations, and the discussion of that grievance included, evidently, according to Mr. Gallagher, the discussion of the claim of retaliation, or at least it was there before everyone as part of the record. On the next day, Mr. — on January 23rd, Mr. Jones was given the task of cleaning and changing the filters on the — on the roof of the building. He claimed this was a job that ordinarily is a two-person job that would take a long time to do. He was told it had to be finished by the end of the following day, January 24th. On the morning of January 24th, he was called away from that job and sent off to another job that basically took him — tied him up all morning. Sometime during that morning, Mr. Smith went up to the roof, he says, to see about the progress on the job. On the — at noon on the 24th, there is a meeting with other members of Mr. Jones's division, which was the — basically the air conditioning and ventilation system. Mr. Jones was the only African American in that group. At that meeting, he was berated by his — both his fellow workers and, Mr. Jones says, by his supervisor, Mr. Smith, for having filed EEOC complaints and grievances, complaining about his treatment rather than coming to the group. That afternoon, Mr. Jones went back to try to finish the job of changing the filters. He says that he was called up to four times on his cell phone by another worker who had been told by Mr. Smith to keep on checking to see if the job was finished. At some point after Mr. Jones had, he feels, finished the job, either Mr. Smith or Mr. Jones, Mr. Jones went up and took pictures. And there was conflict. Mr. Jewell says he took the pictures. Mr. Smith says he took the pictures to show that one of the filters had not been changed. The next time Mr. Jones came to work, I believe on the 28th, which was a Monday, he was told that he was being fired, among other reasons, for not having changed the filters, but having actually falsified records. So let's assume that we agree with you that you've established a prima facie case of retaliation and that they have established a legitimate non-discriminatory reason for the, what's your strongest evidence of pretext? Strongest evidence of pretext, well, number one, Mr. Jones says that he did not commit the offense to which he was charged. And also, it is clear from Mr. Smith's own testimony that he never discussed the matter with Mr. Jones and never to find out whether Mr. Jones had made a mistake or actually falsified. And the rule under which Mr. Jones was fired, falsification of documents, makes it very clear that there's a distinction between falsifying documents and making a mistake. Then there are all the circumstances, all of the circumstances surrounding the retaliation, which go back into the mix when the jury looks at all the evidence and decides whether it's pretextual. And I think a jury could easily determine, based on all of the sequence of events plus what happened at this meeting on the 24th, they could conclude a number of Mr. Jones was a troublemaker because he filed these EEOC complaints. His other co-workers were angry with him, and it was decided he just had to be gotten rid of because he was a troublemaker, because he had filed these EEOC complaints. There's also a conflict in testimony between Mr. Smith and Mr. Gallagher whether or not and when Mr. Jones was ever asked about what happened. Mr. Smith says he was asked at the meeting on January 28th when Mr. Jones was told he was fired. Mr. Gallagher says, no, there was no discussion. That was not an investigative meeting. It was an informational meeting. Mr. Gallagher says he's sort of sure that Mr. Smith must have talked to Mr. Jones beforehand because that's what you're supposed to do, but Mr. Smith did not so testify, and Mr. Jones said that nobody talked to him and asked him about what had happened, whether he had made a mistake, whether he had changed the filters. All that had happened was Mr. Smith, at some point in the process in passing, asked Mr. Jones whether he had finished the job, and also Mr. Jewell had called him up on a number of occasions to ask him whether he had finished the job, and whether the paperwork had been done immediately. Again, a jury could have looked at all of that and decided that they had come upon a basis whether Mr. Jones may have made a mistake, but was never given an opportunity to explain it, and they seized on that as a way to get rid of somebody they saw as a troublemaker, or Mr. Jones, in fact, did not make a mistake. And he says he feels almost sure that he would have changed all of the filters because he's trying to be careful with his work. I think we have your argument. We've got about a minute and a half left. Do you want to reserve that time? Yes, I would. Thank you. Thank you, counsel. Good morning, Your Honor. Jerry Schreibstein for the, Your Honor's Defendant Appellee Bayer Health Care. I would like to address at least briefly the issue of standards as it was prominently featured in the briefs filed by the appellant, not highlighted this morning in an oral argument, but there is quite a bit of thrust in the appellant brief for the suggestion that this court should do something besides follow the more or less traditional McDonnell-Douglas approach. And I think it's evident why that is, because if this case is analyzed along those lines and the traditional burden-shifting mechanism, a plaintiff cannot make his case. He cannot make his case either under a racial discrimination theory, which wasn't even mentioned this morning by counsel other than not to mention it, and he cannot make his case as a retaliation claim. The district court found that the prima facie case failed in the first instance with respect to the race claim because there's zero evidence of competent performance. Mr. Jones. Zero evidence of what? I'm sorry, competent performance by the plaintiff or the appellant. Mr. Jones was terminated following a series of events which culminated in January of 2003. All of these events were documented as significant performance issues, one of which just by way of example was an incident where Mr. Jones determined on his own not to appear for work. This is in the record at 459 paragraph 23 of Mr. Jones' own declaration. He didn't come in for the third day of a three-day work assignment because he realized that he was going to be fired. So you essentially have an employee making his own decisions about how the employer ought to manage him and not coming in to work. Mr. Jones raises numerous factual issues or what he considers to be factual issues with regards to each of these disciplinary steps. However, this is essentially a case that falls along the lines of the Villarreal case that we cited. The issue isn't so much whether these events occurred factually. The issue is whether the employer was pointing to these events as a pretext for an otherwise unlawful motive. And that's where Mr. Jones fails in his case, both with regards to race discrimination and with regards to racial discrimination. As I understand the time sequence, he's at work. He has a noon meeting in which employees and others berate him for filing the complaint. And then the next business day that he returns to work, he's fired. I realize that your client gave other reasons for the firing, but isn't that temporal nexus sufficient to create a tribal issue of fact on pretext? Well, Your Honor, no. In my estimation, obviously, I wouldn't agree with that proposition. The cases that have looked at this issue, which is a vexing one for employers, frankly, is with respect to the temporal proximity, whether it in and of itself is enough to create a tribal issue of fact. And the case we cited to, probably pronounce it wrong, but I believe it's Coxalter, talks about the fact that temporal proximity has to be looked at not in and of itself, but in the entire factual dynamic that's presented. And that in some cases, irrespective of temporal proximity, the facts are enough on their own to either find for or against the employer. And in this case, and the way this case transpired even before it was a litigation, is you had Mr. Jones as somebody who complained about things a lot. Mr. Jones also as an employee made a lot of mistakes. There are some kinds of complaints that are protected, and the EEO complaint is one. And something was the last straw, and I guess the question is whether there's an issue of fact as to what was the last straw, whether it was the failure to complete a work task properly, or whether it was the EEOC complaint. And why specifically on this record couldn't a finder of fact conclude that one of those, either of those, was actually the last straw? Because there's no admissible evidence aside from temporal proximity to establish that proposition. You have a June 02 EEOC filing. You have the December 02 additional submission of evidence by Mr. Jones to the EEOC. You have Mr. Jones raising the issue again January 7th of 03. Mr. Jones raising the issue again January 24th of 03. So does every time Mr. Jones gets up and says I'm being discriminated against, he creates himself a membership once again in the EEOC? I don't think that's the argument. I think the best argument is that they have this meeting in which anger is expressed at his filing of these complaints, and then he's fired shortly thereafter. And I realize that you have a different version of the story, but if we construe the facts at this stage in the light and most favorable plane, if you trumped up this, if somebody trumped up this filter charge, nobody's taken pictures of the filters before, and it goes up there, and he's fired the next day because of the filters. Absent the meeting, I agree with you. I don't think there's an issue. The meeting may create enough of an inference to create a tribal issue fact on pretext. At least that would be the argument. Let me talk about the meeting. It was a union meeting. This is a union chop. Bayer has both salaried and union employees. At union meetings, management's not allowed. At this union meeting, Mr. Smith was invited. This is in the record. There's no dispute about it. Mr. Smith was then a manager. Prior to that, and it says it in his declaration, prior to that, he was a union member. If Smith's not there, I don't think we count the episode either, but he was there. And it's not denied that Mr. Smith was there. Mr. Smith was invited there at the instance of the union. The most Mr. Jones says about what Mr. Smith said at the meeting is that he did not stop others from raising these issues. It was a co-worker session with venting going on, admittedly, but these were not managers or decision-makers with respect to the ultimate termination decision. So, again, if the court is inclined to say, well, proximity, just proximity enough, sorry, alone is enough, then you have the facts of the meeting, which is a union meeting. You have Mr. Smith in attendance at the meeting. There's nothing in the record, and you ask Mr. Rawlston, what's your strongest evidence to show pretext? Strongest evidence is Mr. Jones' statement that he did change the filters, which is equivocal. Strongest evidence is this meeting where a manager was invited by union members and attempted to sort of mollify things. So when you get to, let's go and give this case to the jury, we think it's close enough to where we ought to have a jury trial. And we allow the plaintiff to just sort of kind of bring back all this stuff, say, well, were the pictures taken by this guy or were the pictures taken by that guy? Let's have a jury issue. Let's have a jury trial on pretext, because we're not sure who took the pictures. There's no evidence of retaliation. Again, what you have, all you have is this idea of temporal proximity, and I would submit this is not enough. No, it's a factor, though, because, you know, people generally don't say, okay, I'm going to fire you for an illegitimate prejudicial reason. I mean, that just, we don't see those cases. What you see is a statement of a, and that's what the debates are all about, a statement of a purportedly legitimate reason, and then the assertion that it's pretextual. And usually the temporal proximity to some event, and especially in a retaliation case, may be all there is. Now, how we weigh that's a whole different matter, but I think that seems to be the biggest issue here. And what I would say, Your Honor, is if you look at the case Mr. Ralston cited to the court recently, the Davis case, and the Davis case that the court found as significant was the employer's inability to articulate a legitimate reason for its termination decision. In that case, the plaintiff was one of 16 people terminated, and the employer's stated rationale was it was a group termination, even though other people that were retained had less seniority, and the employer had no other reason than to say she was one of a member of a group. Here you have substantial reasons which are essentially unrebutted on the record. You have Mr. Jones's speculation about motivations, but you don't have any evidence to support that speculation. Let me ask you a question, if I could, please. Do you rely at all on the alternative ground found by the district judge of after acquired evidence? Sort of be foolish not to. I'm sure if you think it's erroneous you would let us know. Well, Your Honor, indeed the court did find that as an alternative basis for its holding. We believe that the issue there versus the Camp case and the McKinnon case is that this was a misrepresentation that went to the heart of the employment bargain. The touchstone for us here is that this is a heavily regulated industry, Bayer is a pharmaceutical manufacturer. There is, and we have included in the record, a zero tolerance policy with respect to document falsification, and that specifically does reference employment documentation. Well, the Camp case to help you for California, it's a California case, but I'm not sure it would take you all the way home as to whether or not when you have a circumstance, involving what is alleged to be discrimination, whether or not the after acquired evidence can do anything more than help you with damages. I concede the distinction in the record between the Federal and the State jurisprudence on the issue. Thank you, counsel. Well, Your Honors, I just have one very quick response, and that is I call the court's attention to the fact that this is a case where the judge, and I'm going to go back to the record, pages 461 to 462, which is Mr. Jones's deposition, I mean declaration, sorry, as to what he said at, or what was said at the December, I'm sorry, January 24th meeting. And he says, number one, he was surprised to see Mr. Smith there at all, because he was told that no management person would be there. But then when they had requested an urgent meeting to question me on why I had filed a complaint with the EEOC and a grievance. Quote, Richard Smith said he could understand what everyone was saying, and that filing grievances did not make any sense. And then on the next page, Mr. Jones states that Richard Smith said nothing in my defense, but supported what the others were saying. So it was certainly not that Mr. Smith, according to Mr. Jones, just sat there and didn't do anything. He actually spoke up and supported what the other people were saying. Thank you. Thank you, counsel. The case just heard will be submitted for decision. The next case on the oral argument calendar is Aloe Vera v. Of America v. United States. I think for this, would you put 15 minutes on the clock per side on this case, thank you. Thank you.
judges: Wallace, Thomas, Graber